**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 94-10084

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JAMES CLIFTON GIBSON,

Defendant-Appellant.

---

94-10649

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JAMES CLIFTON GIBON,

Defendant-Appellant.

---

Appeals from the United States District Court
for the Northern District of Texas

---

(June 5, 1995)

Before REYNALDO G. GARZA, HIGGINBOTHAM, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Defendant-Appellant James Clifton Gibson ("Gibson") appeals his criminal conviction and the denial of his post-trial motions. We affirm.

PROCEEDINGS IN THE COURT BELOW

On November 17, 1992, Gibson and Melvin Boyd Hazelton ("Hazelton") were named in a four count indictment. The defendants were jointly charged in three counts: Count 1, conspiracy to manufacture and to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841 (a)(1); Count 2, possession of methylamine, a listed chemical, in violation of 21 U.S.C. § 841(d)(2); and Count 4, maintaining a place for the purpose of manufacturing and distributing a controlled substance, in violation of 21 U.S.C. § 856(a)(1). Hazelton was also charged with possession of phenylacetic acid, a listed chemical, in violation of 21 U.S.C. § 841(d)(2).

On March 15, 1993, Hazelton pleaded guilty to Count 4 and, pursuant to a plea agreement, testified as a government witness at Gibson's trial. Hazelton was subsequently sentenced to 120 months imprisonment. A jury found Gibson guilty on all counts on March 26, 1993.

Gibson retained new counsel approximately one week after he was convicted, and his trial counsel later withdrew. Gibson filed a motion to suppress evidence, for new trial, to dismiss the indictment, and for release pending appeal on July 28, 1993. The motion for new trial was based on his claim that he received ineffective assistance of counsel at trial because his trial

counsel failed to file a motion to suppress evidence, conducted inadequate pretrial investigation, and failed to call certain witnesses identified by the new lawyer.  The trial court denied the motion, finding that it was not based on newly discovered evidence and was outside the seven day limit for filing motions for new trial imposed by FED. R. CRIM. P. 33.  The district court also denied Gibson's motion to suppress evidence, finding that he had waived his right to object to its admission by failing to timely file for suppression and that he had not shown cause sufficient to merit relief from that waiver under FED. R. CRIM. P. 12(f).  The district court likewise denied the motions for dismissal of the indictment and for release, although Gibson was granted release after sentencing, pending appeal.  Gibson moved for reconsideration of those orders, which motion was denied on December 3, 1993, with a finding that no grounds existed for granting new trial or acquittal.

The district court sentenced Gibson on January 18, 1994 to 135 months imprisonment and a 5 year term of supervised release. Gibson appealed.  On April 15, 1994, Gibson filed a motion for new trial based on newly discovered evidence, and this Court stayed the appeal.  The district court denied the motion, finding that the same arguments had been advanced in earlier post-trial motions and were without merit.  Gibson filed a notice of appeal from that order as well, and this Court consolidated the two appeals.

FACTS

Gibson is an arguably bright, professionally successful

3

mechanical engineer in his early thirties.  He holds patents on and receives royalties from two tow truck designs.  He is married and has two young children and testified that he considers himself a strong Christian.

Hazelton is a forty year old high school graduate with mechanical aptitude and a history of drug use and failed relationships.  The two met in the late eighties when Gibson had Hazelton overhaul the engine in his car.  Gibson enjoyed Hazelton's company and liked to "pick his brain" about technical design problems.  Over time, the two became close friends, vacationing together, and eventually Hazelton moved in with Gibson's family.

Gibson and Hazelton developed a plan to go into business together.  Gibson was going to do design work and, with Hazelton's help, manufacture his own prototypes.  In the Spring of 1992, they jointly purchased a 132.5 acre piece of land just outside of Loving, Texas, which included a residence and several outbuildings.  Both contributed to the down payment on the real estate, but the lien note and title to the land were taken in the Gibsons' names because of Hazelton's past credit problems.  Hazelton moved onto the ranch first, and Gibson and his family moved onto the ranch a short while later.  From April through August, Gibson and Hazelton worked to convert the barn into a workshop.  Neither Gibson nor Hazelton had jobs off the ranch, and devoted much of their time to the renovation.

When law enforcement officers executed a search warrant on the ranch, they found glassware adequate to set up a methamphetamine

4

lab, some of which contained methamphetamine residue, in boxes in the barn. Authorities found a fingerprint identified as Gibson's on one of the pieces of glassware. They also found a jar in the workshop refrigerator containing a small amount of methamphetamine.

The officers found a pair of jeans that smelled like a methamphetamine cook, approximately $40,000 cash, several guns, a notebook with chemical formulas, and a receipt for a mini-warehouse rental among Hazelton's belongings in the house. They also found a telephone scrambler, several loaded guns, and more cash among Gibson's belongings. One officer testified that Gibson made an oral confession during the search, admitting that he was aware of the chemicals on the property, but explaining that Hazelton had offered him money to store the chemicals temporarily.

A subsequent search of the mini-warehouse revealed a large quantity of phenylacetic acid. Hazelton had signed the mini-warehouse lease and listed Gibson's name on the lease document. Gibson had a key to the mini-warehouse which he told his wife to turn over to authorities during his incarceration after the search.

Hazelton and Gibson both testified at trial, giving two very different versions of the facts. Hazelton testified that he had cooked methamphetamine at the ranch three times during the Spring/ Summer of 1992. He testified to a several-year-long collaboration between himself and Gibson in the manufacture, distribution, and use of methamphetamine, and fully implicated Gibson in the methamphetamine cooks on the ranch.

Gibson testified that he was not aware of the presence of any

5

controlled substances on the property, that he did not conspire or intend to manufacture methamphetamine, and that he was ignorant of Hazelton's extensive drug involvement. He explained that he kept large sums of cash on hand because a potential problem with the Internal Revenue Service precluded depositing the funds in a bank account. He explained that his fingerprint was on the piece of glassware in the workshop because he had been nosing around in Hazelton's boxes one time, but he maintained that he did not know what the glassware was for. He denied that he made a statement to an officer at the time of the search admitting knowledge of the presence of chemicals on the property. Finally, he attributed to Hazelton the motive of getting a better deal from the government on sentencing by lying about their partnership.

## SUPPRESSION ISSUES

Gibson claims that his conviction should be reversed because the physical evidence used against him at trial was unconstitutionally seized. He specifically alleges that the judge's signature on the search warrant was forged and that the underlying affidavit included deliberate or reckless misrepresentations.

a. The judge's signature on the warrant.

Appellant submitted a post-trial motion alleging that State District Judge Jim R. Wright's signature on the search warrant was a forgery. He submitted affidavits from two handwriting experts. One reached the "tentative opinion" that the signature on the warrant was written by a person other than Judge Wright. The other

6

expert submitted a report that the signature on the warrant was "probably" not written by Judge Wright. Judge Wright submitted an affidavit stating that he did sign the search warrant. Finding himself "unconvinced that the judge's signature on the search warrant is a forgery," the district court denied the motion. Having reviewed this factual determination for clear error, *United States v. Carrillo-Morales*, 27 F.3d 1054, 1061 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1163 (1995), we find no merit in this ground of error.

b. Adequacy of the affidavit of probable cause.

The affidavit for the search warrant was signed by deputy sheriff Houston Johnson ("Johnson"). He stated under oath that he and three other officers were on a hill across the road from the ranch at 9:34 p.m. on August 1, 1992 conducting surveillance when each of them "smelled an odor associated with the manufacture of amphetamine, methamphetamine or phenylacetone coming from the direction of the [Gibson ranch]." The affidavit stated that all four officers had training in the detection of clandestine labs and were familiar with odors associated with such labs.

Gibson filed a post-trial motion contending that Johnson's allegations that the officers smelled a clandestine lab were deliberately false or were made with reckless disregard of the truth. In determining whether a search warrant establishes probable cause, a court must disregard any intentional or reckless misrepresentations made by the affiant in the affidavit. *United States v. Cherry*, 50 F.3d 338, 341 (5th Cir. 1995). Without

7

question, there was a substantial basis on the face of the affidavit for Judge Wright's determination that probable cause existed for the issuance of a search warrant, *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332-33, 76 L.Ed.2d 527 (1983); however, the affidavit would not have been adequate without the allegations of the odors. *See United States v. McKeever*, 906 F.2d 129, 132 (5th Cir. 1990), *cert. denied*, 498 U.S. 1070 (1991) ("Distinctive odors, detected by those qualified to know them, may alone establish probable cause.")

Gibson relies on trial testimony and information garnered after trial to establish that the officers could not have smelled odors associated with a clandestine drug lab at the time and place alleged in the search warrant affidavit. The evidence established that methamphetamine had been cooked on the property prior to the night in question, but that no drugs were being cooked at the time stated in the affidavit. Evidence also established that officers could detect the illicit odor when they executed the search warrant in the barn and at least in Hazelton's bedroom during the search of the residence. Further, officers testified that waste products from previous cooks, disposed of on the property, could have given off the odor, although Hazelton testified that he disposed of some of the waste in sealed containers.

After considering the arguments advanced by Gibson, the district court found that grounds for acquittal or new trial did not exist. The court went on to find that a recorded conversation

8

among law officers who were conducting the search[1], presented post-trial by Gibson in support of his argument that the search was unconstitutional, was "equivocal at best."  We agree.

Gibson has attempted to establish that because of the distance between the surveillance and the property, because there was no contemporaneous methamphetamine cook, and because other people who were on or near the property testified that they had not noticed the odor, Johnson must have lied about smelling the odor.  Gibson also points to discrepancies between the time the affidavit states that Johnson detected the odor and the time as reported by another officer who was present (a difference of less than an hour) as support for the proposition that Johnson's affidavit contained misrepresentations.

This issue presents a compound question: Did the district court resolve the fact question presented -- that is, did the district court determine whether Johnson's affidavit contained misrepresentations?  Next, is that fact determination clearly

---

[1] The identity (or even the number) of speakers on the tape are not identified in the record:

> Were they gone?
> (inaudible whispering)
> Well, was it set up?
> Ha, ha,...shit.
> I don't know if they found any dope already cooked up or what.
> They hadn't even started cooking yet.

> * * *

> I'm sure there's gonna be some problems...
> That's gonna create a mess, man.  Generate some paper.

erroneous?

The district court's written order finding that the evidence was equivocal, and that no grounds existed for a grant of new trial or acquittal adequately resolved the factual issues presented. Gibson does not dispute that there is evidence in the record that supports the statements made in the affidavit. His argument amounts to an invitation that we find, as a matter of law, that it was physically impossible for the officers to smell the odor of a clandestine methamphetamine lab on the hill across from the ranch on the night of the surveillance. Fifth Circuit precedent would allow us to intervene, and declare testimony incredible as a matter of law, "when testimony is so unbelievable on its face that it defies physical laws." *United States v. Casteneda*, 951 F.2d 44, 48 (5th Cir. 1992), quoting *United States v. Lindell*, 881 F.2d 1313, 1322 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 2621 (1990). This is a close question that we may have decided differently, had it been presented to us in the first instance. The evidence raises serious credibility questions, some of which even approach scientific impossibility. However, neither the scientific and anecdotal evidence in this record, nor our ability to take judicial notice of the laws of nature lead us to the conclusion that the district court's decision is clearly erroneous. The evidence that methamphetamine had been cooked on the property, that its distinctive odor could have lingered in the vicinity of the cooks, that waste water may have been disposed of outside the buildings, and the direction of the wind the night of the surveillance all

10

support Johnson's statement in the affidavit that the surveillance officers smelled the odor of a clandestine lab on a hilltop some distance off the property.  We must therefore affirm the district court's decision.

We note further that Gibson does not contend that he was entitled to a hearing or other evidentiary procedure more extensive that he was provided prior to the court's resolution of the disputed facts.

Gibson's arguments that "the district court's double jeopardy fears are baseless" and "the district court had ample jurisdiction to grant a new trial" are not instructive to us in our task of determining whether the district court reversibly erred in this case.  Although the record reflects that the district court had doubts about his power to remedy Fourth Amendment violations after a verdict was returned, we are convinced that the Gibson did not establish the necessary facts to support his constitutional claims. We therefore do not reach the question of whether the prohibition against double jeopardy or jurisdictional limitations would have precluded Gibson's motion for suppression of evidence raised for the first time post-trial.

INEFFECTIVE ASSISTANCE OF COUNSEL

Gibson contends that his conviction must be reversed because he did not receive effective assistance of counsel at trial. Specifically, he alleges his trial counsel conducted no pretrial investigation, failed to file a motion to suppress the evidence, and failed to present a complete defense.  As a general rule, Sixth

11

Amendment claims of ineffective assistance of counsel cannot be litigated on direct appeal, unless they were adequately raised in the district court. *United States v. Wallace*, 32 F.3d 921, 930 (5th Cir. 1994). Because Gibson's post-trial motions in the district court raised allegations of trial counsel's deficiencies, this case is one of the rare instances where ineffective assistance of counsel claims are ripe for review on direct appeal.

To establish ineffective assistance of counsel, it is incumbent upon Gibson to show that counsel's representations fell below an objective standard of reasonableness and, that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). Our scrutiny of counsel's performance must be highly deferential. *Id.*, at 689.

Gibson's contention that trial counsel's failure to file a motion to suppress evidence based on a faulty search warrant constitutes ineffective assistance of counsel is without merit. Counsel is not required by the Sixth Amendment to file meritless motions.

His other complaints are equally without basis. The record does not support the allegations that trial counsel failed to conduct a reasonable investigation or put on a complete defense. Gibson's trial counsel conducted an inspection of the ranch two days after the execution of the warrant. He filed five pre-trial motions going to discovery and other matters. He reviewed and inspected all physical evidence prior to trial, and subpoenaed six

12

defense witnesses.  At trial, he aggressively and thoroughly cross-examined the government's witnesses, and called five defense witnesses who attacked the credibility of the government's case, and developed a coherent defensive theory of the case.

Trial counsel did a professional job and certainly did not fall below the objective reasonableness required by the Sixth Amendment.

RULE 404(b) EVIDENCE

a. Admissibility

The district court admitted testimony of Kevin Capers ("Capers"), who testified that Gibson had sold him "speed" several times during 1987-1988.  There was no allegation that Capers was involved in any of the charged conduct, and his involvement with Gibson ended in approximately September 1988.

Evidence of other similar bad acts is admissible only if (1) it is relevant to an issue other than the defendant's character to show, *inter alia*, opportunity, intent, knowledge, or plan, and (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.  FED. R. EVID. 403, 404; *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978)(en banc), *cert. denied* 440 U.S. 920 (1979).  A trial court should be particularly wary where the prior bad acts alleged did not result in a criminal conviction. *Id.* at 914.  However, the decision by the district court to admit evidence of an extrinsic offense under FED. R. EVID., 404(b) will not be disturbed on appeal absent a clear showing of abuse of discretion.  *United States v. Bruno*, 809 F.2d

13

1097, 1106 (5th Cir.) *cert. denied*, 481 U.S. 1057 (1987).

The trial court admitted Capers's testimony on rebuttal after Gibson testified. Gibson portrayed himself to be completely innocent of involvement or even knowledge of the production and distribution of methamphetamine that Hazelton described beginning in 1988, and continuing through the August 2, 1992 search of the ranch. He testified that Hazelton's testimony was a lie and that his fingerprint was on the boxed glassware only because he was "nosing" through "glass jars." In this case, the rebuttal evidence that merely completed the picture as to appellant's true involvement in and knowledge of the drug world, thereby correcting a distorted view of appellant's testimony, was relevant. *See United States v. Blake*, 941 F.2d 334, 339 (5th Cir. 1991), *cert. denied*, 113 S.Ct. 596 (1992). Simply stated, Gibson's testimony opened the door and the Government walked right in.

Gibson next argues that even if Capers's testimony is relevant, the probative value is substantially outweighed by unfair prejudice because the jury might have convicted Gibson not for the offense charged but for the extrinsic offense, citing *United States v. Ridlehuber*, 11 F.3d 516 (5th Cir. 1993). Ridlehuber was charged with possession of an unregistered, short-barrelled shotgun found by officers on an open shelf in the kitchen of his residence. Officers also located in the residence some items that might have been used to manufacture illicit drugs, but that also had a legitimate purpose related to Ridlehuber's business. This Court remanded because the evidence of the charged offense, possession of

14

the shotgun, was weak and because there was insufficient evidence that Ridlehuber had committed the extrinsic act of operating a clandestine drug lab.

*Ridlehuber* is inapposite to the case before us. Capers testified that Gibson made multiple deliveries of methamphetamine to him. Secondly, Hazelton's testimony, the fingerprint, and the evidence that Gibson made an admission to a law officer at the time of the search make a much stronger case against Gibson on the charged offense than the circumstantial evidence relied on in *Ridlehuber*. We therefore hold that the district court did not abuse its discretion in admitting Capers's testimony.

b. Limiting instruction

Although Gibson failed to request a limiting charge, we review the court's charge, complained about for the first time on appeal, for plain error. *United States v. Parziale*, 947 F.2d 123, 129 (5th Cir. 1991), *cert. denied*, 503 U.S. 946 (1992). Under this standard of review, Gibson must show that the charge as a whole was "deficient so as to result in a likelihood of a grave mistake of justice." *Id.* We must determine whether the need for the instruction was so obvious that the failure to give it affected the defendant's substantial rights. *United States v. Prati*, 861 F.2d 82, 86 (5th Cir. 1988). In *Prati,* this Court found that there was no danger of a serious miscarriage of justice because the court carefully instructed the jury as to the offenses charged, the elements, and what the jury must find to convict the appellant, then added, "The defendant is not on trial for any act or conduct

15

or offense not alleged in the indictment." *Id*, at 87. The court below likewise instructed the jury on the elements necessary to convict Gibson and used language identical to that approved in *Prati* to limit their consideration to the charged offense. Gibson's claim that there was plain error in the district court's charge is without merit.

SUFFICIENCY OF THE EVIDENCE

a. Conspiracy and possession of a precursor chemical

Gibson contends that the evidence was insufficient to establish Gibson's criminal knowledge or intent with respect to Counts 1 and 2 of the indictment. This Court will reverse a guilty verdict only if, upon viewing the evidence in the light most favorable to the government, a rational trier of fact must necessarily have a reasonable doubt as to any essential element of the crime. *United States v. Onick*, 889 F.2d 1425, 1428 (5th Cir. 1989). In reviewing the evidence, we make all reasonable inferences and credibility choices in support of the jury's verdict. *United States v. Nixon*, 816 F.2d 1022, 1029 (5th Cir. 1987, *cert. denied*, 484 U.S. 1026 (1988).

In order to convict Gibson of conspiracy as alleged in Count 1, the jury must have found beyond a reasonable doubt: (1) the existence of an agreement between two or more persons, (2) Gibson's knowledge of the agreement, and (3) Gibson's voluntary participation in the conspiracy. *United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989). Count 2 requires that Gibson (1) knowingly or intentionally possess methylamine, (2) knowing or

16

having reasonable cause to believe that it will be used to manufacture an illicit drug. 21 U.S.C. § 841 (d)(2). Hazelton testified that he and Gibson jointly participated in manufacturing and distributing methamphetamine, at the ranch and for several years prior to purchasing the ranch. A conviction may rest solely on the uncorroborated testimony of one accomplice if the testimony is not insubstantial on its face. *United States v. Gardea-Carrasco*, 830 F.2d 41, 44 (5th Cir. 1987). We find that the evidence adequately supports the jury's verdict on Counts 1 and 2.

b. 21 U.S.C. § 856, The Crackhouse Statute.

Gibson contends that there was <u>no</u> evidence that Gibson bought his share of the ranch "for the purpose of" manufacturing methamphetamine in violation of 21 U.S.C. § 856(a)(1), sometimes referred to as the "crackhouse statute." His theory of the case was that he purchased the ranch to have a facility to work on his engineering designs and prototypes and Hazelton manufactured drugs on the property without his knowledge or complicity.

In order to prove a violation of § 856(a)(1), the government must demonstrate that Gibson (1) knowingly (2) opened or maintained the ranch (3) for the purpose of manufacturing, distributing or using methamphetamine. *United States v. Banks*, 987 F.2d 463, 466 (7th Cir. 1993). Proof that manufacturing, distributing or using illegal drugs is one among several uses for which a facility is maintained is sufficient to meet the purpose prong of § 856(a)(1). *United States v. Roberts*, 913 F.2d 211, 220 (5th Cir. 1990), *cert. denied*, 500 U.S. 955 (1991). "It is highly unlikely that anyone

17

would openly maintain a place for the purpose of manufacturing and distributing [illicit drugs] without some sort of 'legitimate' cover -- as a residence, a nightclub, a retail business, or a storage barn." *Id.* Liability under the statute does not require the drug related use to be the sole or even the primary purpose of maintaining the property. *Id.* The record supports the jury's conclusion that manufacturing, distribution and use of methamphetamine was one of the purposes for which Gibson maintained the ranch. We find that there is sufficient evidence to support Gibson's conviction under 21 U.S.C. § 856.

## CONCLUSION

Based on the foregoing, we AFFIRM Gibson's convictions.