United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 19, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-50329

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ARANDAL DERRICK GOODLEY

Defendant-Appellant

_____

Appeal from the United States District Court
for the Western District of Texas
(01-CV-10)

_____

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Arandal Derrick Goodley appeals from the

denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or

correct his sentence.  For the reasons stated below, we AFFIRM.

## I.  BACKGROUND

Defendant-appellant Arandal Derrick Goodley ("Goodley") was

arrested in April 1997 after selling cocaine base ("crack

---

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

cocaine" or "crack") to an undercover police officer.  Shortly

thereafter, Goodley retained Tony Chavez ("Chavez") as counsel

and paid Chavez $10,000 for his services.  In September 1997

Goodley was indicted for various drug offenses committed over a

four-year period.[1]  On June 6, 1998, Goodley was convicted on

charges of money laundering and conspiracy and possession with

intent to distribute crack cocaine.

Five days after Goodley's conviction, on June 11, 1998,

Chavez was also indicted in the Western District of Texas for his

role in a separate and unrelated drug conspiracy.[2]  After

appointing new counsel for sentencing, the trial court sentenced

Goodley to concurrent sentences of life imprisonment on the drug

conspiracy charges and twenty years imprisonment on both the

possession with intent to distribute and the money laundering

charges.  This sentence was affirmed by this court in an

---

[1]  Goodley was charged with conspiracy and possession with intent to distribute crack in violation of 21 U.S.C. §§ 841(a)(1), 846, and with money laundering in violation of 18 U.S.C. § 1956.

[2]  Chavez was indicted for two counts of intimidating or using force against a witness in violation of 18 U.S.C. § 1512, two counts of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, two counts of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846, and one count of racketeering in violation of 18 U.S.C. § 1952.
On November 2, 1998, Chavez pleaded guilty to the intimidation charges and was sentenced to thirty months in prison, three years of supervised release, and a fine of $5,000. The illegal activities for which Chavez was convicted were unrelated to the illegal activities for which Goodley was convicted.

unpublished opinion.  United States v. Goodley, No. 98-50923,

slip op. (5th Cir. Sept. 23, 1999), cert. denied, 528 U.S. 1144

(2000).

On January 22, 2001, Goodley filed a motion to vacate or

amend his sentence pursuant to 22 U.S.C. § 2255, arguing, inter

alia, that Chavez's personal legal problems created a conflict

between Chavez's self-interest and Goodley's interest as his

client.  Goodley argued that this conflict rendered Chavez

constitutionally ineffective in Goodley's own case, thereby

depriving Goodley of his Sixth Amendment right to counsel.[3]  On

May 22, 2003, Goodley and Chavez both testified about Chavez's

performance at Goodley's trial during an evidentiary hearing.

After considering this testimony, the district court denied

Goodley's § 2255 claims on March 31, 2004, applying the rule set

forth in Strickland v. Washington, 466 U.S. 668 (1984), and

concluding that Chavez's performance at Goodley's trial was not

constitutionally deficient.

Goodley then filed an application for a certificate of

appealability ("COA"), raising eight grounds for relief from the

district court's decision to deny his § 2255 motion.  On June 28,

---

[3]  Goodley now argues, and the government concedes, that
both the district court judge and the attorneys prosecuting
Goodley's case were aware of the separate and ongoing
investigation into Chavez's otherwise unrelated illegal
activities.  Apparently, Goodley was the only principal in the
courtroom who was unaware of that investigation.

2004, the district court denied Goodley's application for a COA with respect to his first four grounds of relief, but granted the COA with respect to Goodley's last four grounds of relief, all of which revolve around the alleged violation of Goodley's Sixth Amendment rights caused by Chavez's deficient representation.[4]

## II.  DISCUSSION

In this appeal, Goodley claims that the alleged conflict between Chavez's interests and his own should be analyzed under

---

[4]  More specifically, the district granted Goodley's application for a COA with respect to the following claims:

   5) whether trial counsel labored under an actual conflict of interest by choosing his own interests over those of his client; violating Movant's constitutional right to effective and conflict free counsel;

   6) whether the untimely-plea-acceptance argument is waived;

   7) whether trial counsel was ineffective for failing to timely communicate his client's acceptance of a plea offer; and

   8) whether counsel's other failures at trial, including his lacking preparation, failure to move for a judgment of acquittal, and his distraction due to his own ongoing criminal investigation rendered him constitutionally ineffective.

R. at 335.  On December 28, 2004, this court also denied Goodley's application for a COA on the first four grounds of relief requested in his application.  Before an appeal from the dismissal or denial of a § 2254 or § 2255 habeas application can be taken, a would-be appellant must first obtain a COA which can issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2) (2000).  Therefore, only the grounds of relief quoted above are raised in this appeal.

4

the standard set forth in Cuyler v. Sullivan, 446 U.S. 335 (1980). In Sullivan, the Supreme Court held that when a lawyer simultaneously represents multiple defendants, a defendant may be able to establish a limited presumption of prejudice if he can show that "an actual conflict of interest adversely affected his lawyer's performance." Sullivan, 446 U.S. at 348. Goodley now argues that this court should apply this limited presumption from Sullivan because Chavez's conflicted representation of Goodley raises the same concerns present in the multiple representation discussed in Sullivan.

Goodley's arguments are misplaced; the district court's decision to apply the Strickland standard was correct. This court has determined that "[n]ot all conflicts of interest . . . [are] suited to [Cuyler v. Sullivan's] stringent rule," and that "Strickland more appropriately gauges an attorney's conflict of interest that springs not from multiple client representation but from a conflict between the attorney's personal interest and that of his client." Beets v. Scott, 65 F.3d 1258, 1269, 1260 (5th Cir. 1993) (en banc); see also United States v. Corona, 108 F.3d 565, 575 (5th Cir. 1997) (refusing to apply Sullivan to an alleged attorney-client conflict that did not arise from multiple representation). Because the Strickland standard applies when, as here, the quality of representation is alleged to have been affected by the attorney's self-interest, the district court correctly determined that Goodley's claims should be evaluated

5

under Strickland's standard, not Sullivan's.  Recent instruction

from the Supreme Court and the recent decisions of this court

have reaffirmed the strict limitation of Sullivan to cases

involving multiple representation and the application of

Strickland to most other alleged conflicts.  See Mickens v.

Taylor, 535 U.S. 162, 174-75 (2002) (quoting Beets, 65 F.3d at

1266, and criticizing courts of appeals that "have applied

Sullivan 'unblinkingly' to 'all kinds of alleged attorney ethical

conflicts,'" even when the conflict arises because

"representation of the defendant somehow implicates counsel's

personal or financial interests"); United States v. Newell, 315

F.3d 510, 516 (5th Cir. 2002) (stating that Sullivan's standard

is "confined to claims . . . that challenge an attorney's divided

loyalties due to multiple representation," while "Strickland's

two-pronged analysis . . . governs all other attorney-client

conflicts").

Strickland establishes a two-part test for analyzing

conflicts between a convicted client and his attorney's alleged

self-interest:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> 'counsel' guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This
> requires showing that the counsel's errors were so
> serious as to deprive the defendant of a fair trial, a
> trial whose result is reliable. Unless a defendant makes
> both showings, it cannot be said that the conviction or

> death sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

Strickland, 466 U.S. at 687. These two steps are often referred to as the "performance component" and the "prejudice component" of the Strickland test. Id. at 699. The district court found that Goodley's claims failed to meet the "performance component" because Goodley failed to provide any evidence that Chavez's performance was actually deficient. We agree.

Contrary to Goodley's assertions, the district court correctly found that Chavez's failure to interview certain witnesses fell short of Strickland's standard for deficient performance. The district court recognized that under Strickland, a petitioner such as Goodley "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989) (citing, inter alia, Alexander v. McCotter, 775 F.2d 595 (5th Cir. 1985)). Because Goodley did not provide sufficient detail about what the foregone investigations might have revealed or how they might have altered the outcome of his trial, the district court correctly concluded that he failed to show that these foregone investigations met the performance component of the Strickland test.

Second, the district court also correctly rejected Goodley's claim that Chavez's failure to make a motion for a judgment of

7

acquittal pursuant to FED. R. CRIM. P. 29 was deficient under Strickland's standard. After reviewing the record from Goodley's trial, the district court concluded that such a motion would have been futile, given the weight of the evidence presented by the prosecution. The district court correctly analyzed the facts and our precedent; we have repeatedly stated that the performance component of Strickland does not require counsel "to make futile motions or objections."[5] Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990); see also United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (stating that trial counsel's failure to file a motion to suppress evidence did not constitute deficient performance under Strickland because "[c]ounsel is not required by the Sixth Amendment to file meritless motions").

Third, the district court correctly concluded that Goodley's claims about Chavez's general state of impairment failed to meet the performance component of the Strickland test. The district court found

> that the record demonstrates that [Chavez's] representation at trial, though imperfect, was effective

---

[5] Of course, the boundaries of the performance component of the Strickland test are not fixed at mere futility in every case. As we have repeatedly held, "counsel is not obligated to advance every available nonfrivolous argument . . . ." Smith v. Collins, 977 F.2d 951, 960 (5th Cir. 1992) (citing, inter alia, Murray v. Carrier, 477 U.S. 478, 485-88 (1986)). Therefore, a defendant must point to more than the possibility of success in order to demonstrate ineffective assistance of counsel under Strickland. See id. However, when, as here, even the possibility of success is lacking, further analysis under Strickland is unnecessary.

8

and did not rise to the level that violates the Sixth Amendment . . . . [In addition, Goodley] has not proven that the alleged impairment caused any acts or omissions that resulted in an unfair trial nor negated the fact that some acts or omissions were due to human error and not the impairment.

Chavez admitted that he made mistakes while representing Goodley, and he conceded that the ongoing investigation into his own criminal activity was "unsettling" and "disruptive," but he also maintained that he gave Goodley his best efforts and "didn't hold back any punches because of what was happening" outside of Goodley's trial. While Chavez's performance, by his own admission, fell far short of the ideal, more is required to meet Strickland's performance component. See Smith, 977 F.2d at 960 (stating that under Strickland "[t]he defense of a criminal case is not an undertaking in which everything not prohibited is required. . . . [nor does it require] the employment of wholly unlimited time and resources"). Goodley's general claim that Chavez's distraction due to his own ongoing criminal investigation rendered him constitutionally ineffective falls short of this requirement.

Fourth, the district court correctly rejected Goodley's claim that Chavez's performance was actually deficient under Strickland based on Chavez's alleged failure to timely communicate Goodley's acceptance of a plea offer.[6] The district

---

[6] Goodley and Chavez both testified that Assistant United States Attorney Tom Beery ("Beery") contacted Chavez before Goodley's trial and offered Goodley a plea deal involving a ten-

9

court held that "this particular claim of deficient performance" had been waived because it was not included in Goodley's original motion to vacate, which focused solely "on the efforts of [Chavez] at trial" without any "mention of the plea negotiations." The district court also addressed the substance of Goodley's plea argument and concluded that Goodley had not demonstrated deficient performance under <u>Strickland</u> because there was no evidence that the plea would have been accepted by either Goodley's prosecutors or the trial court. This substantive analysis was correct, but we will not consider it further because Goodley has not provided sufficient reasons to overturn the district court's waiver ruling.

Ordinarily, this court accepts "a district court's finding of waiver unless it is clearly erroneous, as it constitutes a finding of fact." <u>United States v. Gipson</u>, 985 F.2d 212, 216 (5th Cir. 1993) (citing <u>Meeks v. Cabana</u>, 845 F.2d 1319, 1323 (5th Cir. 1988)). In this appeal, Goodley argues that the plea offer

---

year maximum sentence. Goodley and Chavez both testified that Goodley initially declined the offer, but they agreed that Chavez was eventually able to convince Goodley to accept it.

However, Chavez testified that he did not immediately convey Goodley's acceptance of this alleged plea deal to Beery or any other attorney involved in Goodley's prosecution. Furthermore, Chavez testified that by the time he communicated Goodley's acceptance of the deal to Goodley's prosecutors, Beery had been replaced by Assistant United States Attorney Mark Roomberg, who refused to accept or acknowledge the plea offer allegedly made by Beery. Chavez testified that he had no good reason for failing to timely communicate Goodley's acceptance of Beery's alleged plea offer, and he acknowledged that "if you want to talk about mistakes, that certainly was."

argument was not waived because his original motion roughly described the factual circumstances related to the alleged plea deal, albeit without expressly claiming that Chavez's performance was somehow deficient. To support this reading of the original motion, Goodley also points to excerpts from the government's first responses to his original motion, which tend to dispute Goodley's description of the factual circumstances related to this alleged plea deal. However, these responses also do not discuss the quality of Chavez's performance as it related to the circumstances surrounding the alleged plea deal. Goodley's citations, and our own examination of the record, reveal that although Goodley discussed the existence of the alleged plea agreement in his original motion, he failed to claim that Chavez's performance in connection with this alleged plea agreement was somehow deficient. Therefore, we conclude that Goodley has failed to show that the district court's waiver finding was clearly erroneous.

In conclusion, the district court correctly found that Goodley's arguments fail to meet the performance component of the Strickland test. We also briefly note that Goodley's claims fail to meet the prejudice component of the Strickland test. To meet the prejudice component of Strickland, a defendant must show that the errors under review "were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. As we held in Goodley's direct appeal, the

11

prosecution presented "overwhelming evidence of guilt" against Goodley during the course of his trial.  <u>United States v. Goodley</u>, No. 98-50923, slip op. at 2 (5th Cir. Sept. 23, 1999). In light of this overwhelming evidence of guilt, Chavez's alleged errors cast no doubt on the result of Goodley's trial.

### III.  CONCLUSION

For the reasons stated above, we AFFIRM.