IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-40113
_____


UNITED STATES OF AMERICA,

Plaintiff - Appellee

versus

JOSE JARAS,

Defendant - Appellant


_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

June 11, 1996

Before: DeMOSS, DENNIS, Circuit Judges, and DUPLANTIER, District Judge.[*]

DENNIS, Circuit Judge:

Following a jury trial, Jose Jaras was convicted of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and sentenced to 51 months imprisonment and three years of supervised release. In this appeal, he raises the following errors: (1) that the trial court erred in denying his motion to suppress evidence; (2) that there was insufficient evidence to convict him of the possession with intent charge; (3) that the prosecutor engaged in misconduct in failing to disclose impeachment material, failing to bring perjury to the attention of the court in a timely manner, and vouching for the credibility of a known perjurer; (4) that the district court misapplied the Sentencing Guidelines in calculating the base offense level; and (5) that the district court failed to

_____

[*] Senior District Judge of the Eastern District of Louisiana, sitting by designation.

afford Jaras his right of allocution. Because we find error requiring reversal of Jaras's conviction, we do not reach the sentencing issues presented in this case.

## I. FACTS AND PROCEDURAL HISTORY

On April 1, 1994, police officer Don Mitchell stopped a car he observed swerving on Highway 59 in Corrigan, Texas to determine if its driver, Ramon Salazar, was drunk. Appellant, Jose Jaras, was riding in the car as a passenger. Officer Mitchell had Salazar exit the vehicle and proceeded to question him. Salazar explained to the officer that he had trouble staying in the lane because he was eating a hotdog, an explanation corroborated by the partially consumed hotdog he finished eating during the stop. Salazar informed Officer Mitchell that he was traveling to Ohio to visit a sick friend, and identified appellant as "Cheeto," stating that he had only known Cheeto for a couple of weeks. While waiting for a computer check of the car, Officer Mitchell approached Jaras, who was sitting in the front passenger seat, to question him. Jaras supplied a resident alien card and stated that he and Salazar were traveling to Illinois to visit Salazar's uncle.

Officer Mitchell testified that he became suspicious that Salazar and Jaras were transporting narcotics based on the conflicting stories he received, the difference in age of the two,[1] and the unlikelihood that Salazar would make an extended trip with a relative stranger. He asked Salazar, who was standing in front of the police car,[2] if there were any drugs in the vehicle. When Salazar responded, "not that I know of," Officer Mitchell asked if he could look in the car, and Salazar gave him permission to do so. Nothing in the record indicates that Jaras, who had remained in the passenger seat of the car, heard this exchange. The officer found no evidence from a search of the car's interior. In the trunk, however, he found a garment bag and two suitcases. Salazar claimed ownership of the garment bag and stated that the suitcases belonged to Jaras. Jaras, who had come to the rear of the vehicle at Officer Mitchell's instruction, did not respond, and Officer Mitchell informed him that Salazar had given him permission to search the car. The officer searched the garment bag and found no incriminating evidence. He then picked up the suitcases, noted that they were heavy, and asked Jaras what was inside them. Jaras said that he didn't know. The officer opened the suitcases and discovered a large quantity of what he believed was marijuana. He arrested both Salazar and Jaras, and seized the suitcases.

Jaras was charged by grand jury indictment with conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846, and possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The district court denied his motion to suppress and, following a jury trial, Jaras was acquitted on the conspiracy count, but found guilty on the possession charge. The district court sentenced him to 51 months imprisonment, the minimum sentence under the Guidelines (based on an offense level of

---

[1] At the time of the arrest, Jaras was nineteen years old, while Salazar was in his early fifties.

[2] Officer Mitchell's car was parked several feet behind Salazar's car on the shoulder of Highway 59.

3

24 and a criminal history category of I), and 3 years of supervised release. Jaras timely filed an appeal in this court.

## II. SUFFICIENCY OF THE EVIDENCE

We first review Jaras's claim that the Government failed to adduce sufficient evidence at trial to convict him on the possession with intent charge, because a finding in appellant's favor on this issue prevents further prosecution of this charge under the double jeopardy clause. *See Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 2147, 57 L.Ed.2d 1 (1978); *Cordova v. Lynaugh*, 838 F.2d 764, 766 n.1 (5th Cir.), *cert. denied*, 486 U.S. 1061, 108 S. Ct. 2832, 100 L.Ed.2d 932 (1988). In order to convict Jaras of the offense of possession of marijuana with intent to distribute, the Government was required prove that he (1) knowingly (2) possessed marijuana (3) with intent to distribute it. *See United States v. Diaz-Carreon*, 915 F.2d 951, 953 (5th Cir. 1990). Jaras claims that the Government did not adequately prove the knowledge element of the offense, arguing that Salazar, the sole witness called by the Government to establish knowledge, did not specifically testify that Jaras was aware of the purpose of the trip or that marijuana was in the trunk of the vehicle, and that Salazar's testimony was "incredible" as he had clearly lied on the witness stand.

Our review for sufficiency of the evidence is a narrow one. We must affirm if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 1789, 61 L.Ed.2d 560 (1979); *United States v. Salazar*, 66 F.3d 723, 728 (5th Cir. 1995). We thus consider the evidence, all reasonable inferences drawn therefrom, and all credibility determinations in the light most favorable to the prosecution. *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469 (86 L.Ed. 680 (1942); *Salazar*, 66 F.3d at 728; *United States v. Resio-Trejo*, 45 F.3d 907, 910-11 (5th Cir. 1995); *United States v. Casel*, 995 F.2d 1299, 1303 (5th Cir.), *cert. denied* __ U.S. __, 114 S.Ct. 472, 126 L.Ed.2d 424 (1993). Our role does not extend to weighing the evidence or assessing the credibility of witnesses. *Glasser*, 315 U.S. at 80, 62 S. Ct. at 469; *Casel*, 995 F.3d at 1303. The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence. *Salazar*, 66 F.3d at 728; *Resio-Trejo*, 45 F.3d at 911 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982)(en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S. Ct. 2398, 76 L.Ed.2d 638 (1983)).

The Government produced three witnesses in its case in chief. Officer Mitchell testified regarding the stop of Salazar's vehicle, its search, and his seizure of the two suitcases and arrest of Salazar and Jaras. Dennis Ramsey, a chemist-toxicologist working for the Texas Department of Public Safety, testified that the substance in the two suitcases seized by Officer Mitchell was marijuana that weighed slightly over one hundred pounds. Jaras's co-defendant, Salazar, testified that he was delivering marijuana for two nephews of his wife, Aleas and Johnny Garza, and that he had known Jaras, to whom he had been introduced by Aleas Garza, for about a year. Salazar further explained how he received

5

the marijuana for the April 1, 1994, trip[3] and the details for payment. Regarding Jaras's involvement, Salazar testified that Jaras had accompanied him on a prior trip, on March 2, 1994, to deliver 50 pounds of marijuana to Lima, Ohio;[4] that he had to pay Jaras $500 out the payment he received for the trip; that Jaras knew on the March 2 trip that marijuana was in the car; and that he did not have to discuss the presence of the drugs with Jaras on either of the two trips "because he already knew about it already."

Jaras argues that Salazar's testimony failed to demonstrate that he had knowledge of the marijuana being transported on April 1, 1994. Review of that testimony, however, clearly reveals sufficient indicia of knowledge to support the jury's verdict. A conviction may be based on the uncorroborated testimony of one accomplice if the testimony is not insubstantial on its face. *United States v. Gibson*, 55 F.3d 173, 181 (5th Cir. 1995); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993). Jaras's real complaint is that the testimony of his co-defendant was inherently unreliable or "incredible," and thus cannot form the basis for establishing knowledge, because Salazar demonstrably lied on the witness stand. During cross examination by Jaras's attorney, Salazar repeatedly denied that he had entered a plea agreement with the Government. That was not true. Although the Government's attorney improperly failed to call this untruth to the attention of the defense and the trial court, the trial court itself, during a recess following the close of the Government's case, informed the defense of the plea agreement and offered the defense

---

[3] Salazar testified that he was instructed to drive to Deerfield Street in Houston and wait there. While he waited next door with either Azilo Garza or the Garza brothers, "Big Ray" took his car to obtain the marijuana. Big Ray returned the car about thirty minutes later, and Salazar and Jaras subsequently left on the trip.

[4] The presentence investigation report states that "on March 2, 1994, the defendant, along with co-defendant, Ramon Salazar transported 100 pounds of marijuana from Houston, Texas to Ohio," and added this amount to the quantity of marijuana seized from the defendants on April 1, 1994 to arrive at a total amount of 200 pounds of drugs attributed Jaras for purposes of determining his base level offense. The district court adopted this finding in sentencing Jaras. Although we do not reach the sentencing issues in this case, we note that Salazar testified at trial that the quantity of marijuana transported to Lima, Ohio on the March 2 trip was fifty pounds.

the opportunity to recall Salazar for purposes of impeachment. The defense agreed to this, called Salazar to the stand as his sole witness, and "cross examined" him on the details of the plea agreement and his failure to admit to it when previously testifying. Confronted with the written plea agreement, Salazar admitted to signing it, although he claimed to be unfamiliar with its details. The jury was thus fully informed of the potential unreliability of Salazar's testimony against Jaras and gave his testimony whatever weight it deemed appropriate.[5] We may not invade the jury's province by substituting our own credibility determinations for those of the jury. *United States v. Lopez*, 74 F.3d 575, 578 (5th Cir. 1996). Salazar's testimony does not rise to the level of "incredibility" because of his false testimony with respect to his plea. *See United States v. Casel*, 995 F.2d 1299, 1304 (5th Cir.), *cert. denied*, __ U.S. __, 114 S. Ct. 472, 126 L.Ed.2d 424 (1993)("To be found 'incredible' as a matter of law, the witness' testimony must be factually impossible.")(citing *United States v. Lindell*, 881 F.2d 1313, 1322 (5th Cir. 1989), *cert. denied*, 496 U.S. 926, 110 S. Ct. 2621, 110 L.Ed.2d 642 (1990) and *United States v. Silva*, 748 F.2d 262, 266 (5th Cir. 1984)). As the jury could reasonably credit Salazar's testimony

---

[5] We note that following Salazar's second trip to the witness stand, Jaras did not renew his motion for a judgment of acquittal. We do not think his failure to renew the motion waived his sufficiency claim. Where a defendant rests without introducing new evidence, he does not need to renew his motion for acquittal in order to preserve his objection to the sufficiency of the evidence. *United States v. Resio-Trejo*, 45 F.3d 907, 910 n. 6 (5th Cir. 1995)(citing *Clark v. United States*, 293 F.2d 445, 448 (5th Cir. 1961; 2 Charles A. Wright, FEDERAL PRACTICE AND PROCEDURE § 463 (1994)). In this case, Jaras moved for a judgment of acquittal after the prosecution rested its case following Salazar's testimony against Jaras. Because Salazar had been less than truthful regarding the existence of a deal with the Government, and the Government did not point this out during its case in chief, Jaras had to recall Salazar for the sole purpose of impeaching him with the *Giglio* material that had not been supplied in time for him to cross examine Salazar during the prosecution's case. Jaras's entire case consisted of Salazar's testimony, after which the defense rested. Thus, the only evidence Jaras presented to the jury consisted entirely of evidence that should have and would have been introduced during the Government's case had the prosecution not failed to produce the impeachment evidence it was constitutionally and, under a discovery order, judicially compelled to provide prior to Jaras's cross-examination of Salazar. Under these circumstances, to find that Jaras had waived his sufficiency argument would simply penalize Jaras for the Government's misconduct.

regarding Jaras's involvement in the offense despite Salazar's initial failure to admit the existence of a plea agreement, we find that sufficient evidence was adduced at trial to support the jury's finding that Jaras was guilty of possession with intent to distribute marijuana.

## III. ILLEGALITY OF THE SEARCH

Prior to trial, Jaras moved to suppress the marijuana found in the suitcases as the fruit of an illegal search. The district court denied Jaras's motion, finding in pertinent part both that Officer Mitchell reasonably believed the scope of consent included the suitcases and that Jaras impliedly consented to a search of his suitcases. Specifically, the court observed:

> In this case, the record establishes that prior to the search of the luggage, Jaras was informed that the driver had consented to a search of the vehicle. Jaras stood by and made no objection when the officer searched his luggage. Indeed, Jaras equivocated somewhat about his ownership of the bag when he indicated to the officer that he did not know what was inside. Considering these facts in conjunction, the Court is convinced that Officer Mitchell was objectively reasonable in believing that the scope of the consent included the suitcases. The Court further finds that Jaras impliedly consented to the search.

It is well established that warrantless searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement, *United States v. Karo*, 468 U.S. 705, 717, 104 S. Ct. 3296, 3304, 82 L.Ed.2d 530 (1984), and that consent is "one of the specifically established exceptions to the requirements of both a warrant and probable cause." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973); *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). The government concedes that Officer Mitchell lacked probable cause to search the car or its contents; consequently, the validity of the search turns entirely on the effectiveness of consent given for the search. In order to demonstrate consent, the government must establish by a preponderance of evidence that consent was voluntary, *id.* at 451; *United States v. Hurtado*, 905 F.2d 74, 76 (5th Cir. 1990)(en banc), and must show that either the defendant himself consented to the search or that consent was obtained from a third party who had the ability to furnish valid consent. *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993, 39 L.Ed.2d 242 (1974); *Jenkins*, 46 F.3d at 451.

As one basis for its finding that the search was constitutionally firm, the district court

9

found that Officer Mitchell was objectively reasonably in believing that the scope of consent extended to the suitcases. There is no question here that Salazar's consent to search the vehicle was voluntary and validly extended to a search of the vehicle itself and Salazar's garment bag. However, as the district court recognized in addressing the issue of standing, Jaras had a reasonable expectation of privacy with respect to the contents of his suitcases. *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993), *cert. denied*, _ U.S. __, 114 S. Ct. 1331, 127 L.Ed.2d 378 (1994); *United States v. Kelley*, 981 F.2d 1464, 1467 n. 1 (5th Cir.), *cert. denied* 113 S. Ct. 2427, 124 L.Ed.2d 647 (1993). For the search to be valid pursuant to Salazar's consent, the Government had to demonstrate that Salazar had actual or apparent authority to consent to a search of the luggage. *See Illinois v. Rodriguez*, 497 U.S. 177, 186-87, 110 S. Ct. 2793, 111 L.Ed.2d 148 (1990); *Matlock,* 415 U.S. at 169-70, 94 S. Ct. at 922.

A finding of actual authority requires proof that the consenting party and the party challenging the search "mutually used the property searched and had joint access to and control of it for most purposes, so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user had assumed the risk that the consenting co-user might permit the search." *United States v. Rizk*, 842 F.2d 111, 112-13 (5th Cir.)(per curiam), *cert. denied*, 480 U.S. 832, 109 S. Ct. 90, 102 L.Ed.2d 66 (1988). The government presented no evidence of joint access or control at the suppression hearing. The fact that Jaras's suitcases were contained in the trunk of a car in which he was a passenger is insufficient to show that Salazar mutually used and had joint control over the suitcases. *See United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993)(boyfriend's actual authority to consent to search of rental car did not extend to search of girlfriend's purse located in its trunk); *State v. Suazo*, 627 A.2d 1074, 1077 (N.J. 1993)("in absence of evidence of joint access to or control over property found in vehicle, a driver's apparent authority to consent to a search of the car does not include the

10

authority to permit a search of the personal belongings of other passengers"); *Ledda v. State*, 564 A.2d 1125, 1129 (Del. 1989)(driver lacked authority to consent to search of passenger's suitcases); *State v. Zachodni*, 466 N.W.2d 624, 628 (S.D. 1991)(driver's consent to search pickup truck did not extend to passenger's purse).

Nor did the Government demonstrate that Salazar had apparent authority to consent to the search of the suitcases, a finding that would require proof that the searching officers "reasonably (though erroneously) believe[d] that the person who has consented to their" search had authority to do so. *Illinois v. Rodriguez*, 497 U.S. at 186, 110 S. Ct at 2800. Here, Officer Mitchell did not mistakenly rely on information that, if true, would have justified a belief that Salazar had actual authority to consent to a search of the luggage putatively belonging to Jaras. Rather, Salazar clearly informed Officer Mitchell that the two suitcases did not belong to him and that they belonged to appellant. Salazar's statement that the suitcases were not his placed Officer Mitchell on notice that his consent to search did not extend to the luggage. The statement established that Salazar did not have authority to consent to a search of the suitcases and any reliance on Salazar's consent was therefore unreasonable. *See United States v. Infante-Ruiz*, 13 F.3d 498, 505 (1st Cir. 1994)(holding that it was not objectively reasonable for officer to believe that driver's consent to search car extended to closed briefcase because the driver had identified it as belonging to passenger); *Welch*, 4 F.3d at 765 (officers could not reasonably believe that boyfriend's consent to search car extended to a search of defendant's purse located in trunk of vehicle); *United States v. Salinas-Cano*, 959 F.2d 861, 865-66 (10th Cir. 1992) (officer could not reasonably believe girlfriend had authority to consent to search of defendant's suitcase simply on the basis of its presence in girlfriend's home). Moreover, it was within Salazar's rights to define the parameters of the search, and his remark that the suitcases belonged to Jaras, regardless of its truth, clearly limited the scope of his consent. *See Jimeno*, 500 U.S. at 252, 111 S. Ct. at 1804 ("A suspect may of course

11

delimit as he chooses the scope of the search to which he consents."). We thus conclude that the search was not justified on the basis of Salazar's general consent to search the vehicle.

The district court also found that the search was valid on the ground that Jaras had "impliedly consented" to the search. The district court relied on the facts that Jaras was informed that Salazar had consented to a search of the car and that Jaras stood by and made no objection when the officer searched his suitcases, as well as its belief that Jaras "equivocated somewhat" about ownership when he indicated he did not know what was inside the suitcases. Typically, when determining whether consent is voluntary, the court looks to the totality of circumstances to assess whether the defendant has freely given consent. *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). In this instance, Officer Mitchell did not ask Jaras whether he could search the luggage, Jaras was not present when Salazar gave his consent to search the vehicle, and there is no evidence in the record that Jaras even heard Officer Mitchell ask Salazar for permission to search the car. We do not think that consent may reasonably be implied from Jaras's silence or failure to object because Officer Mitchell did not expressly or impliedly ask for his consent to search. In *United States v. Shaibu*, 920 F.2d 1423 (9th Cir. 1990), *opinion amended by* 912 F.2d 1193 (9th Cir. 1990), the Ninth Circuit held that a defendant had not impliedly consented to a search of his home by his failure to object when police followed him inside. The court observed:

> In Shaibu's case, no affirmative acts took place. He opened the door not to let the police enter, but only for himself to step out of the apartment to meet visitors outside rather than inside. There is no contention that the police expressly or impliedly asked consent to enter nor that Shaibu expressly granted or refused entry. It is one thing to infer consent from actions responding to a police request. It is quite another to sanction the police walking in to a person's home without stopping at the door to ask permission. . . . To infer consent in this case is only a conjecture and would exceed the scope of any recognized exception to the Fourth Amendment's bar to warrantless entry of the home.

*Id.* at 1427. *See also United States v. Most*, 876 F.2d 191, 199 (D.C. Cir. 1989)(store

12

employees' cooperation did not amount to implied consent to search of defendant's bag when there was no proof that officers had requested permission to search the bag); *State v. Meyer*, 852 P.2d 879, 886 (Or. Ct. App. 1993)(en banc) (husband's failure to object to search of car when informed of wife's consent was not implied consent curing wife's involuntary consent where officers did not ask defendant for consent to search). It is well established that a defendant's mere acquiescence to a show of lawful authority is insufficient to establish voluntary consent. *See Bumper v. North Carolina*, 391 U.S 543, 548-49, 88 S. Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *United States v. Cooper*, 43 F.3d 140, 145 n.2 (5th Cir. 1995)(citing *United States v. Most*, 876 F.2d 191, 199 (D.C.Cir. 1989); *United States v. Gonzales*, 842 F.2d 748, 754 (5th Cir. 1988), *overruled on other grounds by United States v. Hurtado*, 905 F.2d 74 (5th Cir. 1990)(en banc). Under the circumstances of the present case, Jaras's consent to a search of the suitcases cannot be inferred from Jaras's silence and failure to object because the police officer did not expressly or implicitly request Jaras's consent prior to the search. As Officer Mitchell did not have consent to search the suitcases, the marijuana he seized was the fruit of an illegal search and should have been suppressed by the trial court.[6] The case must

---

[6] In finding otherwise, the district court relied on *United States v. Varona-Algos*, 819 F.2d 81, (5th Cir.), *cert. denied*, 484 U.S. 929, 108 U.S. 296, 98 L.Ed.2d 255 (1987), in which a panel of this court approved a search of the defendant's luggage both pursuant to the driver's general consent to search his vehicle and the defendant's "implied consent," where the passenger purportedly "equivocated" about his ownership of the bag and did not object to the officer's search. We find that *Varona* is not dispositive for two reasons. First, the case is factually distinguishable. In
*Varona*, the state trooper conducting the search was evidently acting on an informant's tip that the occupants of a "maroon-colored Datsun with Florida license tags" were carrying illegal drugs, *id.* at 82, both the driver and defendant-passenger were present when the driver was asked to and did sign a written consent to search both the vehicle and its contents, and during the search the driver did not clearly limit the scope of his consent by indicating that the luggage did not belong to him. Further, in finding that the defendant had impliedly consented to the search by his failure to object, the trial court in *Varona* specifically found that the defendant was aware of his rights at the time of the search. Second, *Varona* was decided in 1987, prior to the Supreme Court's decisions in *Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L.Ed.2d 148 (1990), and *Florida v. Jimeno*, 500 U.S. 248, 111 S. Ct. 1801, 114 L.Ed.2d 297 (1991), which made clear that the fourth amendment requires the government to show that police conduct was "objectively

therefore be remanded for further proceedings.[7].  *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991).[8].  it is

reasonable."  As the *Varona* court did not analyze the search under this standard, its decision provides virtually no guidance in determining the validity of the search here.

[7] Given our disposition of the case, it is unnecessary to reach the remaining errors complained of by Jaras, including that the Government attorney engaged in prosecutorial misconduct by failing to disclose impeachment material, failing to bring perjury to the attention of the court in a timely manner, and vouching for the credibility of a known perjurer.


DUPLANTIER, DISTRICT JUDGE, dissenting:


I respectfully dissent from the majority's conclusion that Officer Mitchell did not have consent to search the suitcases.  I would affirm the denial of the motion to suppress for essentially the same reasons assigned by the district judge and also because under the circumstances the searching officer was objectively reasonable in concluding that he did not need defendant's consent.

A brief recitation of the circumstances faced by Officer Mitchell when he conducted the search in question is helpful in determining whether he was "objectively reasonable"

in deciding that he had the right to search the defendant's suitcases.

Defendant Jose Jaras was a passenger in an automobile owned and operated by Ramon Salazar when Officer Don Mitchell stopped the vehicle because he suspected the driver was intoxicated.  At Mitchell's direction, Salazar got out of the car and stood in front of Mitchell's automobile, which was parked behind Salazar's car. In response to questioning by Officer Mitchell, Salazar stated that he was driving to Ohio to visit a sick friend, that his passenger's name was "Cheeto", and that he had known the passenger for "a week or two."  Officer Mitchell then spoke to defendant, who had remained seated in the front passenger seat.  When asked for identification, defendant produced a resident alien card, and in response to questions by Officer Mitchell, stated that he was accompanying Salazar to Illinois to visit Salazar's uncle.  Officer Mitchell's suspicions were sparked by several facts:  Salazar and Jaras told conflicting stories, Salazar knew only defendant's nickname, and Salazar had known the defendant only a brief period of time.  Officer Mitchell was also suspicious because of the considerable

14

age difference between Salazar and Jaras.

Officer Mitchell returned to Salazar and asked him whether there were any narcotics or illegal contraband in the car; Salazar responded, "not that I know of." This further spurred Officer Mitchell's suspicions. Thereafter he asked Salazar for consent to search the vehicle and its contents, which was granted.

After searching the interior of the car, but prior to searching the trunk, Officer Mitchell escorted defendant to the rear of the car where Salazar was. Officer Mitchell informed Jaras that Salazar had consented to the search of the car. Two suitcases and a garment bag were in the trunk. Officer Mitchell asked to whom the luggage belonged. Salazar said that the garment bag was his and that the suitcases belonged to Jaras. Jaras did not claim that the suitcases were his; he remained silent. After searching the garment bag, Officer Mitchell picked up the suitcases, noted that they seemed heavy, and asked Jaras what was in the suitcases. Jaras replied that he did not know what was in the suitcases. Officer Mitchell then opened the suitcases and found the marijuana which was the subject of the motion to suppress. At no time did Jaras object to the search of the suitcases.

In denying the motion to suppress, the district court relied upon *United States v. Varona-Algos*, 819 F.2d 81 (5th Cir.), *cert. denied* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 255 (1987). In *Varona*, a passenger in an automobile which had been stopped by a state trooper was held to have impliedly consented to the search of his luggage in the trunk of the car when he failed to object to the search, which was conducted after the trooper had obtained the consent of the driver of the vehicle to search the vehicle and its contents. I agree with the district court that *Varona* is dispositive of the issues involved herein.

Although the facts in *Varona* and the instant case are remarkably similar, the majority points to several factual distinctions in support of the conclusion that *Varona* is not dispositive. Needless to say, no two cases will involve precisely the same facts. The factual differences between *Varona* and the instant case are of little consequence and certainly do not justify us not applying that decision here. One of the majority's factual distinctions is that, unlike the defendant in *Varona*, defendant Jaras was not present when the consent to search the vehicle and its contents was obtained from the driver. But Jaras was told before the search of his suitcases that the driver had consented to the search. Thus in both cases the passenger defendants were aware of the driver's consent prior to the search of their luggage. It cannot matter that defendant Jaras learned of the driver's consent a few minutes after it was given, so long as he knew of it before the search of his suitcases.

The majority also points out that in *Varona* the vehicle owner did not limit the scope of his general consent to search the vehicle as did defendant Jaras' driver, Salazar, who told Officer Mitchell before the search of the suitcases that they were not his. This distinction strengthens rather than weakens the conclusion that Jaras impliedly consented to the search of the suitcases. Salazar's statement, in Jaras' presence, that the suitcases belonged to Jaras, strongly supports the conclusion that by remaining silent thereafter Jaras impliedly consented to the search.

A third factual distinction relied upon by the majority is that there was no finding by the district court that the defendant was aware of his rights at the time of the search as there was in *Varona*. There is no absolute requirement that the government establish that the defendant knew that he had the right to refuse consent to search his property. *United States v. Gonzales*, 79 F.3d 413, 421 (5th Cir. 1996). Thus the fact that the district court made no specific finding on that issue is not

15

dispositive.  In any event, the fact that prior to the search defendant Jaras was told by the officer that Salazar had consented to the search would put any reasonable person on notice that consent was a pre-requisite to search.

The majority introduces a new requirement for implied consent:  it must be preceded by "an express or implied request" to search by the police officer.  The Ninth Circuit case relied upon, *United States v. Shaibu*, 920 F.2d 1423 (1990), involves facts very different from this one.  The majority concludes that "Jaras's consent to a search of the suitcases cannot be inferred from Jaras's silence and failure to object because the police officer did not expressly or implicitly request Jaras's consent prior to the search." *Varona*, upon which the district court relied, makes no mention of a requirement that the police officer "expressly or impliedly request" consent as a prerequisite for implied consent to search.  The majority offers no analysis of what would constitute an "implied request" to search.  I am unable to understand how a police officer could "impliedly request" consent to search; I am
convinced that there is no such thing.  Indeed, the concept of implied consent involves situations in which because of the circumstances the police officer need not request consent.

The majority also concludes in effect that *Varona* is not binding precedent because in *Varona* the court did not analyze the search using the "objectively reasonable" standard enunciated later in *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) and *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)

In *Rodriguez*, consent to enter an apartment was given by the girl friend of the apartment's occupant, who used her key to the apartment to obtain entry.  She referred to the apartment as "our" apartment and told police that she had clothes and furniture in the apartment; in fact, she had previously moved out of the apartment.  The lower courts concluded that because the woman did not have common authority over the premises at the time she allowed police to enter, her consent to enter the apartment was invalid.  The Supreme Court reversed, despite the fact that entry was provided by someone who did not have common authority over the premises.  The determination of validity of the consent to enter is judged against an objective standard:  given the facts available to the officer at time, a peace officer of reasonable caution would conclude that the consenting party had authority over the premises.  *Illinois v. Rodriguez*, 497 U.S. at 188, 110 S.Ct. at 2801.

In *Jimeno*, the Supreme Court applied the objectively
reasonable standard in analyzing whether the search of a paper bag located in a vehicle conducted pursuant to the vehicle owner's consent was valid.  The lower courts invalidated the search because the police officer failed to obtain specific consent to search the paper bag. The Supreme Court reversed; the search was valid because it was objectively reasonable for the officer to believe that the scope of the consent permitted him to open the paper bag.

Under *Rodriguez* and *Jimeno*, a search is valid if, considering the circumstances known to the officer at the time of the search, the officer was objectively reasonable in concluding that he had consent to search.

The "objectively reasonable" standard is less stringent than that applied in *Varona*. In upholding the validity of the search in *Varona*, the court affirmed the district court's conclusion that the defendant had impliedly consented to the search.  Under *Rodriguez* and *Jimeno*, a search can be upheld if it was objectively reasonable for the officer to conclude that there was implied consent for the search, even if the officer's conclusion was erroneous. Intervening Supreme Court cases rejecting a more restrictive

16

worth noting that *Varona* has been cited with approval. *See United States v. Eldridge*, 984 F.2d 943, 948 (8th Cir. 1993).[9]. In *United States v. McCann,* 465 F.2d 147 (5th Cir. 1972), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973), the court relied upon a similar disclaimer of knowledge by an occupant of an automobile with respect to the contents of the car and of a briefcase therein to support its conclusion that the officer had probable cause to search the automobile and the briefcase.[10]

<u>DECREE</u>

For the foregoing reasons, the conviction and sentence are reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

application of the exclusionary rule can hardly be the basis for concluding that an earlier Fifth Circuit decision validating a search is no longer binding precedent.

The effect of the majority's decision is to jettison the principle of implied consent. While the doctrine of implied consent has not been applied often,

it nonetheless remains valid
especially in light of the less stringent "objectively reasonable" standard  articulated by the Supreme Court in *Rodriguez* and *Jimeno*.

In addition to the implied consent relied upon by the district judge, I conclude that the search was valid because at the time the search of the suitcases was executed Jaras no longer had a right of privacy in the contents of the suitcases.  Considering Officer Mitchell's statement to defendant that Salazar had consented to the search, Salazar's statement in defendant's presence that the suitcases were defendant's suitcases, defendant's failure to claim the suitcases, defendant's failure to object to the search, and his statement that he did not know what was in the suitcases,

the "search and seizure did not infringe an interest of the defendant which the Fourth Amendment was designed to protect." *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978).  Officer Mitchell was objectively reasonable in concluding that he did not need Jaras' consent, implied or express, to search the suitcases.

17