# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31045

United States Court of Appeals
Fifth Circuit

**FILED**
August 23, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellant

v.

LARRY WALKER,

> Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:15-CR-138

Before JOLLY, SMITH, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:*

The government appeals the district court's partial grant of a motion to suppress evidence as the fruit of an illegal search of a vehicle on the basis that the consent to search was invalid. Because we conclude that the district court did not clearly err in finding, after an evidentiary hearing, that Larry Walker's consent to search was not voluntary, the partial grant of the motion to suppress evidence is AFFIRMED.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-31045

## FACTS AND PROCEDURAL HISTORY

On September 2, 2014, Sergeant Donald Dawsey, who was assigned to the narcotics criminal patrol unit, was patrolling Interstate 10 in Baton Rouge. Dawsey was parked in the median around 10 p.m. when he observed a silver Chrysler 300 pass his location traveling eastbound with a tinted plexiglass license plate cover that he apparently mistakenly believed was in violation of Louisiana Revised Statute § 32:53.[1]  Dawsey stopped the vehicle and, as he approached the passenger's side, he said he noticed one or two screwdrivers in the driver's door console.

The three occupants of the car were Larry Walker, the backseat passenger, Walter Glenn, the driver, and Thomas James, the front passenger. Glenn provided his driver's license and proof of insurance, and Dawsey asked him to step to the rear of the car so he could show him why he stopped them. Dawsey pointed out the license plate cover.  Glenn informed Dawsey that Walker had rented the car and that the license plate cover was attached to the car when it was rented.  Glenn also offered to remove the cover, to which Dawsey replied, "that's gonna be up to you."  Upon Dawsey's inquiry into the trio's travel history, Glenn said the men were returning from a Labor Day family cookout in Beaumont,[2] Texas, after driving from Connecticut to Texas the prior week.  Glenn said that Walker is his cousin and they both lived in Connecticut, while James is his uncle and lived in South Carolina but was planning to meet up with his wife in New Jersey.  He also said the car was due back to the rental agency on September 5, 2014.

Dawsey then returned to the passenger side of the vehicle and asked Walker for the rental agreement.  Walker also told Dawsey that he rented the

---

[1] Louisiana Revised Statute § 32:53 does not make it illegal to have a tinted license plate cover.

[2] The defendants pronounced it "Bewmont" or "Boomont."

No. 16-31045

vehicle the prior week in Connecticut and that it was due back on September 5, 2014.  Walker said that he had moved to Orlando, but had flown back to Connecticut a few weeks earlier for a visit before the group decided to drive to Beaumont, Texas to visit family members.  He said they had also stopped in Houston.   The rental paperwork verified that Walker currently lived in Orlando and that the car was rented in Connecticut on August 22, 2014.

Dawsey returned to the rear of the vehicle and resumed questioning Glenn about where Walker was from and how he traveled to Connecticut. Glenn said Walker was from Connecticut, but had moved to Florida, and that he had driven from Florida to Connecticut.  Dawsey asked Glenn what kind of car Walker had and Glenn said he had a Range Rover.  Glenn did not say Walker drove a Range Rover to Connecticut.  Dawsey then told Glenn to remain where he was and said he was going to "run all the stuff and make sure everything is straight."  Instead of running any of the information, Dawsey returned to his police cruiser and called for backup officers to assist in a search of the vehicle.

About twelve minutes after initiating the stop, Dawsey exited his cruiser, told Glenn he was still running the information and asked additional questions about the men's trip and the specific day of the family cookout. Glenn said that he and Walker both drove on the trip to Beaumont, that they went to Houston to do some shopping earlier that day – referencing visible shopping bags in the vehicle, then returned to Beaumont and that he drove from Beaumont to Baton Rouge.  He also reiterated that the cookout was on Labor Day. Dawsey responded that "we've gotta big problem people going this way from Houston with you know something like a hundred pounds of marijuana, a couple kilos of cocaine, large amounts of U.S. currency."  Glenn replied that the men did not have any of that and also did not have drug histories.

No. 16-31045

While still in possession of the rental agreement, insurance verification and Glenn's driver's license, Dawsey asked Glenn for permission to search the car. Glenn consented, but Dawsey told a second officer who had arrived on the scene that they needed to check with Walker, the "registered owner." Dawsey then questioned the front passenger, James, about which items in the car belonged to him and instructed him to exit the vehicle. James was then frisked.

About fifteen minutes after initiating the stop, Dawsey ordered Walker out of the car, saying, "I asked the driver if I could search the car, and he said yeah." Walker replied, "[h]e said…he said you can search it, search it." Dawsey then started questioning Walker about which items in the car belonged to him and had him move to the back of the car.

During the search, officers did not find any drugs, but instead found: (1) a screwdriver; (2) a front license plate and bolts; (3) "newly purchased items"; (4) 114 blank ID cards; (5) 49 blank check sheets; (6) 45 holographic overlays; (7) power inverter; (8) printer; (9) scissors; (10) tape; (11) an iron; (12) $95,000 cash; (13) seven white envelopes with names and social security numbers written on them; and (14) multiple computer devices. When Dawsey suggested the men were making credit cards, Glenn responded that he was not making credit cards and said his wife owned a beauty salon. Glenn also said the money belonged to him and that he buys houses. Additionally, Walker was self-employed in the real estate business.

Walker, Glenn and James were arrested and subsequently indicted for unauthorized access device fraud in violation of 18 U.S.C. §§ 1029(a)(3) and 2; aggravated identity theft in violation of 18 U.S.C. § 1028A; and conspiracy in violation of 18 U.S.C. §§ 371 and 2, 18 U.S.C. § 514(a)(1) and (2), 18 U.S.C. § 1028(a)(1), and 18 U.S.C. § 1029(a)(2). The defendants filed motions to suppress, with Glenn and James contesting the justification for the initial stop,

4

all three contesting the duration of the stop, and Walker contesting the search of the vehicle.

After a hearing and post-hearing briefing, the district court denied Walker's motion as to the legality of the stop, but granted the motion on the basis that the vehicle search was in violation of the Fourth Amendment because Walker did not give voluntary consent to search. Thus, the court suppressed all evidence illegally seized. The district court denied Glenn's motion and James' motion, finding that they were not unlawfully seized and had no standing to challenge the search. The government subsequently appealed.

## STANDARD OF REVIEW

In reviewing a district court's grant of a motion to suppress evidence obtained in violation of the Fourth Amendment, this court reviews the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003). Voluntariness of consent is a factual inquiry which is reviewed for clear error. *United States v. Rounds*, 749 F.3d 326, 338 (5th Cir. 2014). "Where a court has based its denial on live testimony, 'the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses.'" *Id.* (quoting *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir.2005)). We view the evidence introduced at a suppression hearing in the light most favorable to the prevailing party. *United States v. Orozco*, 191 F.3d 578, 581 (5th Cir.1999).

## DISCUSSION

The government asserts that the district court clearly erred in finding that Walker's consent was not voluntary under the totality of the circumstances.

Consent provides an exception to the Fourth Amendment's warrant and probable-cause requirements. *Rounds*, 749 F.3d at 338; *see also Schneckloth*

*v. Bustamonte*, 412 U.S. 218, 219 (1973).    But, to rely on consent, the government must prove by a preponderance of the evidence that the consent was given freely and voluntarily.  *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997).    Voluntariness is determined by the totality of the circumstances and includes a consideration of the following non-exclusive relevant factors:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988).  The district court concluded that Walker's consent was the product of an involuntary custodial status and coercive police tactics.

Specifically, the government asserts that all six relevant factors favor a finding of voluntariness.  We disagree.

*(1) The voluntariness of the defendant's custodial status*

The government asserts that, although Walker was stopped and detained, he was unrestrained on a public road and that this factor should carry little weight.

Although Walker was not handcuffed, Dawsey's actions clearly indicated that Walker was not free to leave.  Dawsey also testified to the fact that Walker was not free to leave at any time after he was ordered to exit the vehicle.  Additionally, Dawsey had possession of Walker's rental agreement, insurance verification and Glenn's driver's license throughout the stop.  A panel of this court has said in an unpublished opinion that the failure to return a rental agreement after the issuance of a warning citation where there was no indication that the defendant asked for its return was, by itself, not sufficient

to invalidate consent. *United States v. Bessolo*, 269 F. App'x 413, 419-20 (5th Cir. 2008). In a subsequent case, this court further acknowledged that a reasonable person might not feel free to leave in a similar situation until he had received the "promised warning and his driver's license had been returned." *United States v. Cavitt*, 550 F.3d 430, 439 (5th Cir. 2008). "Furthermore, we have previously concluded that an officer's retention of identification documents suggests coercion." *Id.*

Thus, under the circumstances here, it was not clearly erroneous for the district court to weigh this factor against the government.

*(2) The presence of coercive police procedures*

The government asserts that there was no basis for the district court to find that Walker was subjected to coercive tactics.

In *United States v. Jaras*, 86 F.3d 383, 389-90 (5th Cir. 1996), this court concluded that the district court erred in denying a motion to suppress evidence where an officer received consent to search a vehicle from the driver, but then proceeded to search the luggage of a passenger. The officer never asked the passenger for consent to search his luggage, which was contained in the trunk of the vehicle, but merely informed him that the driver had consented to a search of the car. *Id.* This court concluded that the search was not justified on the basis of the driver's consent. Further, this court found that the passenger had not given implied consent by failing to object when the officer informed him that the driver consented or when he responded to questions about the suitcases, saying in relevant part: "Jaras's consent to a search of the suitcases cannot be inferred from Jaras's silence and failure to object because the police officer did not expressly or implicitly request Jaras's consent prior to the search." *Id.* at 390. *Jaras* is not inapposite, as the government claims.

No. 16-31045

Here, Dawsey conceded that he never asked Walker for consent to search. Instead, Dawsey merely informed Walker that Glenn gave consent. Also, Dawsey acknowledged that he knew Glenn was not authorized to give consent. The record does not establish that Walker would have been able to hear Dawsey ask Glenn for permission to search or tell the other officer that they also needed to check with Walker. But the record does establish that Dawsey clearly knew Walker rented the car and that he was the only person authorized to provide consent. It was unreasonable for Dawsey to rely on any consent from Glenn to search the car. Dawsey never informed Walker that only he could lawfully provide consent or refuse to give consent to search the vehicle, but he did inform Walker that he already had Glenn's consent. Moreover, the fact that Walker did not object does not establish consent. *See id.; see also Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (the burden of proving consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority.").

Thus, it was not clearly erroneous for the district court to find that the officer's statement of Glenn's consent, rather than asking Walker for consent, also militates against the government.

*(3) The extent and level of the defendant's cooperation with the police*

The government asserts that the district court correctly found that Walker's cooperation with Dawsey favors voluntariness. Indeed, Dawsey testified that the occupants did not seem nervous and were cooperative.

*(4) The defendant's awareness of his right to refuse to consent*

The government asserts that the district court ignored Walker's criminal history in concluding that Walker was not aware of his right to refuse consent.

Dawsey admitted that he never informed Walker of his right to refuse consent and that he retained possession of Walker's rental agreement, Glenn's driver's license, and the insurance verification throughout the encounter. The

8

government's assertion that the officers discussed the need for Walker's consent within earshot of Walker is not established by the record. Regardless of whether the officers discussed it outside the rental car or in Dawsey's patrol car, Walker was still in the backseat of the rental car stopped along a major, public interstate with heavy traffic noise. The backdoor was closed. Nothing on the dash cam video[3] of the stop contradicts the district court's findings. *See United States v. Wallen*, 388 F.3d 161, 164 (5th Cir. 2004) ("Findings that are in plain contradiction of the videotape evidence constitute clear error.").

We have said that, in cases involving ambiguous statements of consent or where the officer retains possession of a defendant's personal effects, the failure to inform the defendant of his right to refuse consent properly militates against the government. *See United States v. Shabazz*, 993 F.2d 431, 438 (5th Cir. 1993); *see also United States v. Zavala*, 459 F.App'x 429, 434 (5th Cir. 2012). Further, the government fails to establish that any prior, unrelated criminal history somehow provided Walker with the knowledge that only he, as the authorized driver and renter, could provide consent for the search of the car or refuse consent where the officer had already removed and frisked two occupants, conveyed that he had Glenn's consent, and retained possession of the occupants' personal effects.

Accordingly, it was not clearly erroneous for the district court to find that the failure to inform Walker of his right to refuse consent militates against the government.

*(5) The defendant's education and intelligence*

The government asserts that the district court erred in finding that this factor weighed only marginally in favor of voluntariness.

---

[3] The government introduced a transcript of the video. The audiovisual recording may be accessed via the following internet link:
http://www.ca5.uscourts.gov/opinions/unpub/16/16-31045.mp4.

Dawsey testified that his report said thirteen years of education which indicated that Walker had conveyed that he had at least briefly attended college. Dawsey also specifically said that he did not make any assessment of Walker's level of intelligence, but added that he "spoke well and our conversation was well."

Based on the record, the district court did not clearly err in finding that this factor marginally militates in favor of the government.

*(6) The defendant's belief that no incriminating evidence will be found*

The government concedes that Walker may not have been aware that incriminating evidence would be found in his rental car. Further, the government agrees that, because there is little evidence in the record from which to draw a conclusion, the district court properly found that this factor was of neutral weight in the voluntariness balance.

**CONCLUSION**

After weighing each of these factors, the district court found that Walker did not voluntarily consent to the warrantless search of the vehicle, saying, "[t]he degree of Walker's cooperation and intelligence are outweighed by the involuntary nature of his custodial status, the use of coercive police tactics coupled with the fact that he was not informed of his right to refuse consent. These factors weigh heavily against the voluntariness of his purported consent."

After concluding that Walker's purported consent was not voluntary, the district court conducted a probable cause inquiry, despite the failure of the parties to raise Dawsey's pronouncement[4] of probable cause, and determined that there was not probable cause.

---

[4] Dawsey testified that he believed he could verbalize probable cause for the search.

No. 16-31045

The district court heard live testimony, did a thorough analysis considering all factors and concluded that the government did not prove by a preponderance of the evidence that the consent was given freely and voluntarily under the totality of the circumstances. Nothing on the video or in the record contradicts the district court's factual findings on consent.

For the reasons stated herein and stated by the district court in its Ruling and Order, we conclude that the district court did not clearly err in finding that Walker's consent was not voluntary. Thus, the district court's partial grant of the motion to suppress is AFFIRMED.[5]

---

[5] Walker raises an alternative issue of whether there was reasonable suspicion for an officer to transform a traffic stop into an on-scene drug investigation. Based on our conclusion that the district court did not err, we do not find it necessary to determine whether that issue is properly raised or to address it.